Good morning, Your Honors. May it please the Court. My name is Alexandra Angel and I, along with my co-counsel, Charlie Wang, are students from Southwestern Law School here under the supervision of Gowri Ramachandran. Welcome. Today we appear on behalf of Gualberto Chavez-Garcia. I will argue that his petition for review should be granted and his order of removal is vacated, and I plan to reserve six minutes of my time for rebuttal. Your Honors, an individual has a statutory right to appeal an immigration judge's removal order according to 8 U.S.C. 1229 A.C. 5. Taken in conjunction with 1101 A.47B, this right can only be severed two ways, when the BIA affirms an immigration judge's order or when the time during which an appeal may be taken has run. These two avenues are the only two ways prescribed by Congress that make an immigration judge's order final for both removal and deportation orders. What does that have to do with waiver? Well, Your Honors, it has to do with waiver because here the BIA actually treated the departure waiver regulation as essentially a jurisdictional issue. They stated that they did not have jurisdiction to hear the issue. Furthermore, Your Honors, this regulation conflicts with 1101 A.47B because it adds an additional avenue of finality. This conflict is much like the one in Tor v. Lynch, which led this Court to invalidate a departure bar regulation seemingly placing a physical presence requirement on the filing of motions to reopen when Congress refused to do so. But didn't he say that he did not intend to appeal the decision of the IJ through counsel? Why is that not a waiver regardless of finality? Why does that become a waiver of whatever right he has to appeal? Well, Your Honors, intentions can change and the burden remains on the government to prove a waiver existed by clear and convincing evidence. They must prove that the intent to waive was clear and unambiguous and that the individual waived his right voluntarily and knowing involuntary. Well, now you're running a different argument. Stay with the first argument, which you raised more directly an argument that's only lightly touched on in the previous case. And your argument is that the regulation and the behavior of the BIA is statutorily unacceptable. Isn't that right? It's invalid, not unconstitutional. It's invalid because it's not consistent with the statute. Why can't an individual simply say, as Judge Bea was alluding to, I don't want to pursue this, I'm out of here, i.e., I waive any rights that statute gives me. Why can't an individual do that? Assuming it's voluntary, etc., etc. Well, Your Honors, the individual could perhaps do that. However, here we do not have that because the waiver is not present. As I stated before, a waiver must be proven by clear and convincing evidence by the government. What's unclear and unconvincing about his attorney filing a statement stating that Garcia, Chavez Garcia, quote, did not intend to appeal the decision of the IJ? What's unclear and unconvincing about that intention? Well, Your Honors, I would like to point this Court to the record at page 205, where Alberto actually reserved his right to appeal through counsel. This, taken in conjunction with the ambiguous statement that he does not intend to appeal, does not meet the burden of clear and convincing evidence of a waiver. If, for example, an individual had stated that they were counseled on their rights and they understood the rights that they were relinquishing and the implications of that within the document that you refer to, then in that case, sure, a waiver could possibly be found. However So there has to be a colloquy between the IJ and counsel for the alien saying, now, counsel, you say that he doesn't want to appeal. Have you explained to him his rights on appeal? Have you given him time to consider it? Is this what you're saying? No, not necessarily, Your Honor. What we're stating is that if, taken this document, the request for removal, which contains this language that Alberto does not intend to appeal, if that instead stated that he is waiving his right to appeal and that he was informed of his rights and the consequences of that, and perhaps even included Alberto's signature, then that would clear the burden of proof of clear and convincing evidence of a clear and unambiguous waiver. Do you have any cases that say that the use of the words, I do not intend to appeal, do not effect a waiver, that they require the use of the words, I waive appeal? Not off the top of my head, Your Honor. However, intentions, again, as I'd like to reiterate, intentions can change. And this language is not clear enough to state that Alberto intended his right to act. Again, why is it not clear enough to say, I don't intend to appeal? Because it's not stating that the individual understands the right that he is waiving and the implications of waiving that right. So you require a recitation by the alien that he fully understands. Some sort of colloquy like we do in sentencing. Do you understand these rights that you're giving up? You're giving up this right, you're giving up that right. That's what you're talking about, right? Sure. Yes, Your Honor. Now, next, just cite me a case that says that. Well... That there has to be some sort of ork and towel colloquy with the alien to make sure that he knows that he's really waiving his right of appeal. Your Honor, I can't think of a case off the top of my head. However, there is... Right. I mean, it's a good idea, but so far it hasn't been accepted as law, has it? Not to my knowledge, Your Honor. However... You would like us to say that? Yes, Your Honor. Let's assume for the moment that we say that. And let's further assume that we find on this case that he's actually knowing an intelligent waiver. And that the events that occurred thereafter were based on that knowing an intelligent waiver. Do you have anything to say about whether it's even legally possible to make that waiver within the periods of time set out in the statute? Or have you waived that part of the argument? Is your argument simply there was no intelligent waiver here? Or is your argument that even if there is an intelligent waiver here, he can't have waived his rights until the statutory periods have been allowed? Which is it? Or is it both? It is our position that our client did not waive his right to appeal. So that's your focus. Your focus is there was no intelligent waiver here. Yes, Your Honor. Furthermore, because the BIA has to follow their own regulations, whether or not there was a waiver, this is still properly before the court. Because the BIA would still have to follow the departure waiver regulation that is in effect currently. And the one that really essentially presents this conflict, much like the one in Torr v. Lynch, which led to the invalidation of the regulation, the departure bar regulation there. Moreover, Your Honors, I would like to touch on the crime of violence issue. In the event that DiMaia is overturned, we contend that Galberto was not convicted of crimes that meet the categorical definition of a crime of violence. A crime of violence is one that carries with it a substantial risk of force. And to be a categorical match, the conduct punished at the state level must be narrower than or the same as the generic offense. Where the conduct encompassed by the elements of the offense in the ordinary case of a crime carries with it a substantial risk of force, it can then be said to be the equivalent of a crime of violence. But here, Your Honors, the touchstone of a crime of violence is the lack of actual consent. And here, Galberto could have been convicted of these crimes with actual consent being present. The jury instructions for the convictions that he was charged with only require a lack of legal consent. Because the state statute punishes conduct that is broader than the generic Federal counterpart, it cannot be said to be a categorical match. This is your section 16a, 16b argument. Do I understand that correctly? 16b, Your Honors. You're arguing it's not a 16b. Yes. But you concede in your brief that it is a 16a violation, right? There's a specific concession in your brief that, yes, this would have been a violation under 16a, but it's not a violation under 16b. That's what your brief says. Perhaps, Your Honors, but the grounds in which Galberto was removed on was the grounds of 16b. And if there are no further questions, I'd like to reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Elizabeth Fitzgerald Sambu on behalf of Respondent, Attorney General of the United States. This is an immigration case involving a Mexican petitioner, and it involves three main issues. First, whether the petitioner is a United States citizen. And second, whether he waived his right to appeal by departing the United States prior to filing an appeal with the Board of Immigration Appellants. Counsel, the appellant didn't raise the issue of citizenship, so I don't think you have to disperse that. Okay. That's fine. And third, whether he was properly ordered removed as an aggravated felon. So, skipping straight to the waiving his appeal issue, our position is that he failed to exhaust his challenge, both to the waiver and to his aggravated felony challenge, because by departing the United States prior to filing the appeal, he failed to exhaust his administrative remedies as of right, which is required under 8 U.S.C. 1252 D.1, prior to this Court taking jurisdiction and reviewing those issues. But he wasn't told, was he, that he had the right in post-conclusionary voluntary departure to raise the, to continue his appeal? I'm not sure if this record actually included a post-conclusion voluntary departure analysis, but he was, before the immigration judge, through counsel, he stated that he wanted to reserve his right to appeal, and then he later changed his mind. And his counsel informed the Department of Homeland Security that he would like to be removed. And so that, it was in writing and a fax to DHS, and in effect that constituted a waiver. Yes, Judge. Let me pursue that with you by offering a hypothetical case. All right? Let's assume that the only thing in the record regarding waiver of the right to appeal is a statement by the immigrants' counsel that, quote, my client does not intend to appeal, unquote, makes that statement to the I.J. It's the only evidence in the record with regard to this whole question of waiver of appeal. Does that meet the government's burden to prove by clear and convincing evidence that this was a intelligent and knowledgeable waiver? Yes, Your Honor. That is our position, and that actually happens very frequently. How can that be your position if all there is in the record is a simple statement, my client does not intend to appeal? There's nothing in that that even says waiver. Right, Your Honor. But in immigration proceedings, frequently at the very end, after the immigration judge orders an individual removed, the immigration judge has a hypothetical. Stay with my hypothetical. Don't get us mired in what was going on in the case. Okay. Stay with my hypothetical. You have a simple situation in which counsel says my client does not intend to appeal, never uses the word waiver. There's no evidence of what, in fact, the petitioner may or may not have intended or understood. That's all we know is my client does not intend to appeal. Counsel says that to the IJ. The government has a burden to prove by clear and convincing evidence that there has been a knowledgeable and intended waiver. Has the government carried its burden in any case where that's all the case in those exact terms? But, Your Honor, there is case law where this court has held where a pro se individual was not aware that they could have waived their appeal. This court has stated that that's one reason why an attorney is necessary or helpful in those situations because an immigration court typically, or in your hypothetical, the immigration judge would have asked the petitioner's counsel, do you waive your right to appeal or would you like to appeal this decision to the Board of Immigration Appeals? And if counsel states my client does not intend to appeal this decision, that in effect constitutes a waiver and that actually is typically done in immigration proceedings throughout this country. So generally that constitutes a waiver and then the order of removal is final on that day. And oftentimes that happens where the petitioner is detained as the petitioner in this case was detained and frequently individuals don't want to sit in detention for another 30 days before they could be removed. Some of them just want to go home. And often there could also be a stipulated removal order which is a different scenario. So this court has held, this court has case law, I forget the exact name of the case, but the attorney signed the stipulated removal order on behalf of their client or the petitioner in that case and this court held that that was a valid waiver of the right to appeal. We also have a case called Proa Tovar which when this statement is made rather than perhaps just a letter or a telephone call to the IJ with no information about whether the petitioner, him or herself, was present. Does that matter? We don't think it matters, Your Honor, because counsel is presumed to be acting on behalf of their client. So typically the counsel would have discussed a waiver of appeal with their client prior to proceeding before the immigration judge and then in this case prior to filing the fax with DHS stating that he wanted to be removed. And actually in this case the fax states why the petitioner wanted to go home. It's because his mother was ill and he wanted to return to Mexico to see her. So we can infer from that that of course the counsel had discussed this with his client prior to filing this with DHS. And so for that reason we would argue that it was a voluntary waiver of his right to appeal. Let me ask you about that because I agree with you that to me the most convincing evidence is that letter. It's a reasoned letter. It's not simply I waive it. There's a reason why he wants to be with his mother. And I think frankly for me that's more compelling than the fact that he was removed. But when I read the BIA order in this case, the BIA order seems to focus far more on the removal than it does on the letter. And I'm wondering can we essentially deny a petition based on the letter when the BIA itself did not apparently, it's a little unclear how it treated the letter. It called it evidence but doesn't say he waived appeal because of the letter. So can you help me think through because I agree with you. The letter to me is, I think this case is very different than the last case we just heard in large part because of that letter. But the BIA didn't seem to rely on that letter. So how do we get to where you want to go in light of that? There are a few reasons. So the board was relying on the regulation 1003 ACFR 1003 subsection sorry 0.3 subsection E. And in that regulation the effect of departing the United States is that the individual waived their appeal. So following the regulation we presume that that individual or we infer their intent that they intended to waive the appeal. So that's what the board was relying on. It was following its own regulation when it held that he waived his appeal. But with regard to your question, the petitioner in this case had the opportunity to respond to DHS's motion for summary disposition prior to the board issuing its decision. And in this case petitioner's counsel actually did submit something else in addition but he failed to respond to DHS's argument that he had waived his appeal by being removed. So in a sense DHS's motion was unopposed that moving for summary disposition DHS essentially asked the board to follow ACFR 1003.3 E. And the petitioner's counsel failed to respond to that argument and instead filed factual evidence about his conviction records. So the board relied on DHS's motion and then followed its regulation that states as a matter of law pursuant to the regulation that he an individual waives their appeal when they depart. So that's why the board was focusing on the fact that he actually had been removed and the fact that he had requested removal versus whether his waiver was actually voluntary. So the petitioner for the first time before this court is now asserting that his waiver was not actually voluntary but that's actually a separate issue than whether as a matter of legality whether his departure constituted a waiver of appeal. But I guess what I'm saying is that if we if I find or the court finds the letter very persuasive can we deny the petition on the basis of the letter when the BIA in its order did not rely on the letter? Yes your honor and that's actually why we're arguing exhaustion because he failed to respond to DHS's argument that his waiver was a voluntary request to be removed. So for that reason that's why we're asking this court to dismiss the petition because he never addressed that issue before the board which is why the board did not address it in its decision. And it's your view is that even though the BIA did not spell it out the way you just did very articulately that we still have the ability to do that even though the BIA itself did not do that because it's an exhaustion argument. Right so in this case the board was not put on notice that it should even address that issue because the petitioner failed to exhaust it. So if this court wanted to go beyond the board and decide whether the waiver was voluntary it would have to decide that the petitioner fully exhausted that argument to the board and that the board I guess erred or that it should have addressed that issue. So in this case that's why we're arguing the board didn't even know that it should address the issue because the petitioner never raised it in the first place. I understand what you're saying. So moving on from whether his waiver was voluntary I'll move on to the petitioner's argument that the regulation violates the Immigration and Nationality Act and our position that it does not violate the Immigration and Nationality Act and the reason for that being is that the petitioner's argument although this case involves the departure bar under 8 CFR 1003.3E what the petitioner is really challenging here is the regulation 8 CFR 1003.39 which states that an order of removal is final if the individual waives their right to appeal. So that's really the focus of the challenge to the regulation. So 8 CFR 1003.39 was actually promulgated in 1987 and the provision of the Immigration and Nationality Act that the petitioner states conflicts with that regulation's statement is 8 USC 1101A47B and so in that provision it states that an order of removal is final when the board affirms the decision or if the expiration of the time permitted to appeal expires. So because that statute was enacted after the regulations had already been in place for almost a decade or yeah almost a decade we can infer that Congress was aware of the regulation that they did not intend to change that regulation and that that's not actually what they were doing with that subsection of the Immigration and Nationality Act and further even. Well wouldn't we normally think that a later enacted statute by Congress could overturn a prior enacted regulation that proves to be inconsistent with the statute? Yes, Your Honor. Why would we infer that the statute is intended even though it doesn't use the right language is intended to incorporate a facially inconsistent regulation? I don't quite get your argument there. Yes, Your Honor. Help me with that. Okay, so in the statute itself it says that the order becomes final upon the expiration of the time permitted to appeal and at the same time that Congress enacted that statute a different provision of the INA stated that regulations should be promulgated to explain what that means. So our position is that that section of 1101A47B is ambiguous and that Congress actually intended the agency to promulgate regulations to determine what the time for appeal should be. What's ambiguous about 1101A47B? Just that it doesn't explicitly state what time period the individual has to appeal. So it is... It doesn't explicitly state what? It doesn't state the time that an individual has to appeal. So an individual has 30 days to appeal the IJA's decision, but that's stated through regulations. So Congress left that open for the agency to decide how long an individual has to appeal a decision. So the agency through regulations has decided that it's 30 days with certain exceptions that apply if the individual waives their appeal, which is what happened in this case. So you're reading that the statute is saying the period you have to appeal means whatever it is the agency says you're doing. Right, or at least the agency has the authority to issue regulations that describe what the INA left open, if that makes sense. And in addition, this court already has precedent on a slightly different regulation, but it's very similar in the case of Blaze. In that case, there's a different regulation, 1003.4, that states that if an individual already files an appeal with the Board of Immigration Appeals and later departs, that that in effect constitutes a withdrawal of the appeal that was filed with the board. So this case is slightly different because he didn't file an appeal yet, and the regulation at issue is different, but the same premise applies. And in that case, Blaze, this court held that because 8 U.S.C. 1101 subsection G states that if an individual departs subsequent to an order of removal, that the order of removal was lawful, this court relied on that provision of the statute to determine that the waiver of appeal or the withdrawal of appeal was valid and that that individual had actually executed their own removal order. I take it your position then says that the concurring opinion in Garcia v. Lynch by Judge Burson, she was worried about the wrong issues. Right. We believe that that case, that she was focusing on the provision of the statute that left it open, so there actually is no conflict that she was concerned about. And in addition, her concerns that the individual would not have time to think over their appeal, that's actually not an issue in this case where he waived his appeal weeks after his final order of removal, and the record indicates that he conferred with counsel prior to making that decision. And finally, I know I'm out of time, but once again we argue that the aggravated felony determination was not exhausted at the Board of Immigration Appeals, and that even if it had, we believe this court should hold this case for the Supreme Court's decision in DeMaia v. Lynch. Okay, thank you. Thank you, Your Honors. Good morning, Your Honors. My name is Charlie Wang on behalf of Petitioner Galberto Chavez Garcia. I wanted to address two issues first. The opposing counsel advises that Galberto did not exhaust his arguments before the BIA. However, under discourse precedent and coit de holder, the BIA lacks any power to hold its own regulations invalid, lest Galberto need not have presented his claim before the BIA with regard to the statutory conflict. With regard to the crime of violence, under the court reviews questions of whether a crime is a crime of violence under de novo review, the IJ here committed a plain legal error in its holding. The IJ stated that because the crimes for which Galberto was charged with were crimes where they lacked consent and not one that society is able to recognize or that the victim was underage, that necessarily included substantial risk of force. However, under discourse precedent and Rodriguez-Castillon, the court does not give deference to agency interpretation of state or federal criminal statutes as they do not administer them or have any particular expertise. If we look to the clear elements of the crimes for which Galberto was charged under 288AG and 289B, the elements are the sexual acts that the victim was developmentally disabled such that they cannot give legal consent and whether the defendant knew or could have reasonably have known of that victim's inability to give consent. Mr. Wang, let me interrupt you for a second. Council for the government suggested that on the issue of whether this was a crime of violence, we should await the decision of the Supreme Court in Sessions v. DeMaio. What's your position on that? Well, Your Honor, we have two reasons why this case should still go forward. Under discourse precedent and U.S. v. Lee, this court is able to look at pre-DeMaio cases to determine whether this constitutes a crime of violence. In addition, Galberto has been in custody from 2009 to 2013 and has been deported to Mexico from 2013 and onward. He's been away from his family for nearly a decade now and any remedy that we can afford, give to Galberto would be very much welcomed by him. Your Honors, 288AG and 289B do not constitute crimes of violence as the California judicial interpretations of those statutes indicate that a developmentally disabled person may assent to a sexual touching but may not be able to give their legal consent. Under, one second, under People v. Thompson, the person may give assent but not to a sexual touching but not be able to give their legal consent. In Valencia v. Gonzalez, this court held that the touchstone analysis of a crime of violence was whether one was not that they couldn't give legal consent but they couldn't give their actual consent as giving their actual consent as the lack of actual consent presents with a substantial risk of force would be used to subdue the victim. In addition, under California Court of Appeal precedent, the court held that obviously it is the business of the state to stop sexual predators from taking advantage of the developmentally disabled. However, in doing so, the state has restricted the ability of developmentally disabled people to ever have consensual sex. Legal consent presupposes an intelligence capable of understanding the acts and its nature and its possible consequences but that does not necessarily mean that a lack of legal consent requires the use of force to engage in sexual intercourse. I see my time is up, Your Honor. Is there any more questions? Thank you very much. All right, the case of Chavez-Garcia v. Sessions is submitted and the court thanks counsel for a very illuminating argument and the court is adjourned.
judges: Bea, Owens, Plager